UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**THOMAS W. MELLINO,**	Chapter 13
    Debtor	Case No. 05-15905-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the "Amended Motion for Order Affirming that the Provisions of the Automatic Stay Do Not Apply to the Property Located at 104 Water Street, Medford, MA and for Relief from the Automatic Stay to Proceed with State Court Action to Secure Possession" (the "Stay Relief Motion") filed by 104 Water Street Lending Trust ("104 WSLT") on July 14, 2005. In its Stay Relief Motion, 104 WSLT represents that, as the holder of a second mortgage on Property located at 104 Water Street, Medford, Massachusetts (the "Property"), it had conducted a prepetition foreclosure sale of the Property. Accordingly, in its Stay Relief Motion, it asserted that Thomas W. Mellino, the Chapter 13 debtor ("Mellino" or the "Debtor"), was deprived of an interest in the Property

1

which would be protected by the automatic stay and that it had established, *inter alia,* "cause" for relief from the automatic stay. *See* 11 U.S.C. § 362(a) and (d). The Debtor filed a Response to the Stay Relief Motion on July 25, 2005 in which he recognized that his right to redeem the Property from 104 WSLT had terminated on May 25, 2005 upon execution of the Memorandum of Sale. Nevertheless, he asserted that he had the right to redeem the Property from the holder of a senior mortgage on the Property.

The Court conducted a hearing on the Stay Relief Motion and the Debtor's Response on September 22, 2005. At the hearing, neither party represented that the material facts were in dispute, and neither party requested an evidentiary hearing. At the conclusion of the hearing, the Court ordered the parties to file supplemental briefs by September 30, 2005 and took the matter under advisement. Both parties filed briefs within the time established by the Court. The issue presented is whether the Debtor established either legal or factual grounds which would warrant denial of 104 WSLT's Stay Relief Motion. For the reasons set forth below, the Court finds that the Debtor failed to establish either legal or factual grounds for denial of the Stay Relief Motion. Accordingly, the Court shall enter an order granting the Stay Relief Motion.

## II. BACKGROUND

The Debtor filed a Chapter 13 petition on June 28, 2005, approximately one month after the foreclosure sale conducted by 104 WSLT. Approximately six weeks later, on August 15, 2005, he filed Schedules, a Statement of Financial Affairs, and a Chapter 13 Plan. In the meantime, on July 14, 2005, 104 WSLT had filed its Stay Relief Motion.

On Schedule A- Real Property, the Debtor listed the Property with a current market value of $450,000.00. On Schedule C - Property Claimed as Exempt, the Debtor claimed exemptions available to him under Massachusetts law, in particular the exemption available under Mass. Gen. Laws ch. 188, § 1, to which he ascribed a value of $139,723.68. On Schedule D - Creditors Holding Secured Claims, the Debtor listed three creditors: AMC Mortgage Services as the holder of a first mortgage on the Property with a claim in the sum of $228,594.82; Apogee Realty Trust [sic] as the holder of a second mortgage on the Property with a claim in the sum of $65,000.00, and Virginia Mellino with a lien on the Property in the sum of $100,000.00.

On Schedule F- Creditors Holding Unsecured Nonpriority Claims, the Debtor listed 104 WSLT with a claim in an amount he represented was unknown, as well as miscellaneous credit card debt. On Schedule G- Executory Contracts, the Debtor did not list any executory contracts or unexpired leases.

With respect to his current income and expenses, the Debtor, on Schedules I and J, disclosed gross monthly income from his employment as a trucker in the sum of $4,792.00, net monthly income from his employment in the sum of $3,561.00, and monthly expenses, including mortgage payments of $1,870.00, in the sum of $4,480.00, resulting in a monthly income deficit of $919.00. In his Statement of Financial Affairs, the Debtor represented that his annual earnings were $22,000.00 for 2003 and 2004. To date, the Debtor has not amended any of his Schedules.

Despite his disclosures as to his income and expenses on Schedules I and J, which

3

he represented were true and correct to the best of his knowledge, information, and belief under penalty of perjury, the Debtor submitted a Chapter 13 Plan on the same day he filed his Schedules, which provided for a monthly plan payment of $413.00. Through his 60-month Plan, the Debtor proposed to pay his three secured creditors, AMC Mortgage Services, Apogee Realty Trust [sic] and Virginia Mellino, identified as the holder of "lien for child support," in full in the total sum of $393,594.82. He noted, however, that he disputed the claims of Apogee Realty Trust [sic] and Virginia Mellino. The Debtor also proposed to pay a dividend of 59% to his general unsecured creditors, whose claims he represented totaled $13,439.09. Although he represented in his Plan, under "Other Provisions," that there would be no liquidation of assets to fund the Plan, in the section captioned "Liquidation Analysis," the Debtor indicated that he would contribute "$425,000 of net proceeds from the sale of house," although he had claimed the Massachusetts homestead exemption in its equity.

As noted above, the Debtor was the owner and mortgagor of real estate located at 104 Water Street Medford, Massachusetts. The Property was encumbered by a second mortgage given by the Debtor to Kenneth A. Rosenberg, trustee of the Apogee Trust, dated January 13, 2004, and recorded with the Middlesex South District Registry of Deeds. Apogee Trust assigned its second mortgage to 104 WSLT pursuant to an Assignment of Mortgage dated May 23, 2005. The Debtor defaulted under the second mortgage, and the mortgagee initiated foreclosure proceedings. The mortgage originally given to Apogee

Trust contained a Statutory Power of Sale.[1]

On May 25, 2005, the auctioneer, Stephen E. Dean ("Dean"), conducted the foreclosure sale, at which Mohammed Abouchleih ("Abouchleih") submitted the winning bid of $107,000.00 and paid the required deposit of $10,000.00. On the same day, Abouchleih, Attorney Malcolm B. Milne, on behalf of the mortgage holder, and Dean executed a Memorandum of Sale. The Memorandum of Sale provided in pertinent part the following:

> The premises shall be conveyed by the ususal mortgagee's deed under the statutory power of sale, subject to the foregoing, and, in addition, subject to

---

[1] Section 21 of Mass. Gen. Laws ch. 183 provides in pertinent part the following:

> The following "power" shall be known as the "Statutory Power of Sale", and may be incorporated in any mortgage by reference:
>
> (POWER.)
>
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

Mass. Gen. Laws ch. 183, § 21.

any and all unpaid taxes, tax titles, tax liens, water and sewer charges and any other municipal assessments or liens. *Said premises will be sold and conveyed subject to* and with the benefit of all, if any, rights, rights of way, restrictions, easements, covenants, improvements outstanding tax titles, municipal or other public assessments, liens or claims in the nature of liens, and *existing encumbrances of record, if any there be, insofar as the same are in force and applicable, created prior to the mortgage which is being foreclosed.* The purchaser will be responsible for payment of documentary stamps fees. Also, the purchaser shall pay all other recording fees.

The sale shall not be deemed complete until the successful bidder shall have made his or her deposit and signed this Memorandum of Sale. Papers are to be passed and the balance of the consideration, in good funds (bank or certified check) is to be paid at the officers of Gilmartin, Magence, Camiel & Rose LLP . . . on or before 11:00 a.m. on or before the thirtieth day following the sale [i.e., Friday, June 24, 2005], provided that such day is one on which the Middlesex Southern District Registry of Deeds is open for business, and if not, then on the next day on which such Registry is open for business. Time is of the essence with regard to this agreement.

*\*\*\**

Mortgagee reserves the right in its sole discretion to extend the performance day of the sale for a reasonable period of time provided that the purchaser is able to provide sufficient documentation or other satisfactory evidence of a good faith effort to comply with the terms of the sale. Any reasonable extension shall bear the consideration of the mortgagee's per diem rate under the mortgage being foreclosed.

In the event the successful bidder refuses to sign the Agreement of Sale or fails to complete the purchase in accordance with the terms and conditions herein, the holder of the mortgage reserves the right to sell the mortgaged premises to the next highest bidder. In the event that next highest bidder does not wish to purchase the premises, the holder of the mortgage reserves the right to purchase the premises at the amount bid by the second highest bidder. The second highest bidder's right to purchase the property under the Memorandum of Sale shall only take effect if the highest bidder defaults in its obligation to purchase said property. The Buyer understands and acknowledges that any such sale (whether to the second highest bidder or to the mortgagee) shall not relieve the buyer form its obligations hereunder nor operate as a waiver by the mortgagee of its rights and remedies against the buyer.

(Emphasis supplied).

On Monday, June 27, 2005, Abouchleih assigned his interest under the Memorandum of Sale to the Debtor. The next day, the Debtor filed his Chapter 13 petition. The Debtor, though arguing that "the Memorandum of Sale is an executory contract that could be assumed or rejected by the Debtor," did not move to assume or reject the Memorandum of Sale by way of motion or through his Chapter 13 Plan. Moreover, he did not address the issues of whether the time to complete the sale had expired or whether Abouchleih was in breach of the contract because he failed to complete the purchase within the time to perform under the terms of the Memorandum of Sale, in which events the contract could not be assumed under 11 U.S.C. § 365. Moreover, the Debtor did not submit a copy of the assignment from Abouchleih, which, to be enforceable, would have had to comply with the Statute of Frauds. The Debtor continues to reside in the Property.

In its Stay Relief Motion, 104 WSLT alleged that as of June 30, 2005 (i.e., 35 days after the foreclosure sale and two days after the bankruptcy filing), it was owed approximately $66,386.28, although the principal amount of the mortgage was $24,000.00; that as of June 21, 2005, the Debtor, who was in default under the first mortgage to AMC Mortgage Services, Inc., owed it $229,471.98; and that the Debtor's ex-spouse held a real estate attachment in the sum of $100,000.00. The Debtor denied owing 104 WSLT approximately $66,000.00, contending, instead, that 104WSLT had provided him with a payoff of $56,386.28 as June 28, 2005, which included a "foreclosure fee" of $4,280.00, as well as auctioneer's fees and legal fees in excess of $15,000.00. Despite eventually listing AMC

Mortgage Services, Inc. as the holder of a secured claim in the sum of $228,594.82 in his Chapter 13 Plan, the Debtor represented in his Response to the Lift Stay Motion that he was without knowledge of the amount he owed the holder of the first mortgage on the Property.

### III. POSITIONS OF THE PARTIES

A. 104 WSLT

104 WSLT observes that neither Abouchleih nor the Debtor performed under the Memorandum of Sale within 30-days following its execution and prior to the commencement of the Debtor's bankruptcy estate. Moreover, it maintains that a foreclosure sale by the second mortgagee does not give the Debtor a right to redeem the Property from the first mortgagee. Relying upon Marshall v. Francis, 332 Mass. 282, 124 N.E.2d 803 (1955), it argues that a foreclosure sale by a junior mortgagee cuts off the mortgagor's interest, but can have no effect on the rights of the senior mortgagee. According to 104 WSLT, the Debtor's right of redemption terminated upon the execution of the Memorandum of Sale, and, therefore, the Property is not part of the bankruptcy estate. See 11 U.S.C. § 541. 104 WSLT thus argues that because the Property is not part of the bankruptcy estate, it is unprotected by the automatic stay.

B. The Debtor

The Debtor admitted in his Response that his right to redeem the Property vis à vis the second mortgage held by 104 WSLT was terminated on May 25, 2005 when the Memorandum of Sale was executed. The Debtor, however, asserts that he is entitled to

redeem the property because the Memorandum of Sale is an executory contract which he can assume or reject, although he does not evaluate the Memorandum of Sale with reference to the widely-employed Countryman definition of what constitutes an executory contract. *See* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973). Furthermore, he argues that because the sale to the high bidder was not consummated, he may redeem the Property because a new Memorandum of Sale was not entered into with new buyers. In the alternative, he maintains that he has the right to redeem the property from the senior mortgagee, relying upon the Supreme Judicial Court's decision in Jennings v. Wyzanski, 188 Mass. 285, 74 N.E. 347 (1905).

**IV. DISCUSSION**

    A. Applicable Law

        1. Bankruptcy Law

Section 362(d) of the Bankruptcy Code states in relevant part,

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. § 362(d). Section 362(g) allocates the burden of proof under § 362(d). It provides:

> In any hearing under subsection (d) or (e) of this section concerning relief

9

> from the stay of any act under subsection (a) of this section-
>
> (1) the party requesting relief has the burden of proof on the issue of the debtor's equity in the property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g). With respect to § 362(d)(2), once the movant has established that it is an undersecured creditor (or, as pertinent to this case, that the Debtor lacks an ownership interest in the Property), the debtor has the burden of establishing that the property is "necessary to an effective reorganization." Under United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988), "what this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.*" Id. at 375-76 (emphasis supplied). In short, the Debtor must show that there is "'a reasonable possibility of a successful reorganization within a reasonable time'" Id. at 376.

Section 1322(c)(1) of the Bankruptcy Code allows a debtor to cure his or her default under a mortgage unless the property has been sold at a foreclosure sale which was conducted in accordance with applicable state law. In re Crichlow, 322 B.R. 229, 234 (Bankr. D. Mass. 2004). It is incumbent upon the debtor to offer evidence that the sale was not conducted in accordance with Massachusetts foreclosure laws. Id.

    2. Real Property Law

In Goldman v. Damon, 272 Mass. 302, 172 N.E. 226 (1930), the Supreme Judicial Court stated:

10

> It is our settled law that all that a mortgagee acting under a statutory power of sale can sell by valid sale upon foreclosure is the interest in the property conveyed by the mortgage. Donohue v. Chase, 130 Mass. 137; Dearnaley v. Chase, 136 Mass. 288; Fowle v. Merrill, 10 Allen, 350; Torrey v. Cook, 116 Mass. 163. By statute, G. L. c. 244, § 14, "The premises shall be deemed to have been sold * * * subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, a ssessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage." Upon such a sale the former owner of the equity becomes entitled to any surplus of the amount received from the sale in excess of the amount due upon the obligation secured by the mortgage. This he can recover from the mortgagee by action at law. O'Connell v. Kelly, 114 Mass. 97.

272 Mass. at 305, 172 N.E. at 227. Similarly, in Brooks v. Bennett, 277 Mass. 8, 16, 177 N.E. 685, 687 (1931), the court observed:

> The import of these statutory words is that all that can be sold in execution of a power of sale in a mortgage is the title conveyed by the mortgagor by the mortgage subject to the specified restrictions. *The holder of a mortgage is empowered to sell, under the power contained in the mortgage, the whole title of the mortgagor and of himself.* In other words, he may and must sell the equity of redemption of the mortgagor or of his grantee, and whatever interest has passed under the mortgage to its holder. The bids made at such sale must be for that which is to be sold and for the alone; that is to say, the bids must be for the value of the interest in the estate which will pass under the foreclosure deed. *If there are prior mortgages, these cannot be sold, and their amount ought not to be included in the bids.* The same is true of taxes, assessments and liens, and whatever else may be superior to the mortgage being foreclosed. They must all be excluded from the amount of the bids. The dids [sic] in amount are and must be net and not gross. The from [sic] of the notice of a mortgagee's sale of real estate set forth in said section 14 conforms to the other provisions of that section and makes plain that which is to be sold. All this is made clear beyond peradventure by the terms of the statute.

Id. (emphasis supplied). Thus, when a junior mortgagee forecloses on property and conveys it to a purchaser, the purchaser is essentially paying for the equity of redemption. The purchaser's acquisition of the equity of redemption from a junior mortgagee has been

11

described as follows:

> usually the difference between the mortgage debt and the agreed-upon total value of the property, . . . take[ing] the property "subject to" the mortgage. This means that the purchaser is simply acquiring the equity of redemption and is not personally obligated on the indebtedness secured by the mortgage. The mortgagor remains personally liable, and the mortgagee may look to the mortgagor or to the land by way of foreclosure for satisfaction of the mortgage debt. In most instances the land becomes the primary fund for the satisfaction of the encumbrance, with the mortgagor assuming the position of a surety. The mortgagee cannot collect from the purchaser, but the purchaser may make the mortgage payments and, indeed, if he does not, he runs the risk of losing the property to the mortgagee's foreclosure action.

14B Howard J. Alperin, Lawrence D. Shubow, and Roland F. Chase, *Transfer of Mortgagor's Interest*, Mass. Prac. Series, § 17.137 (1996 & Supp. 2004) (footnotes omitted). Alternatively, again in the case of a foreclosure sale by a junior mortgagee,

> the purchaser may pay the value of the redemption interest, take subject to the mortgage, and, in addition, "assume" the mortgage and agree to pay it. By accepting a deed containing language that he "assumes and agrees to pay" the mortgage, the purchaser becomes contractually obligated to pay off the mortgage. If the purchaser does not make the mortgage payments, the mortgagor/grantor has the right to bring a contract action against him, even though the mortgagor/grantor has not made the overdue payments himself. However, any recovery by the mortgagor/grantor must be held as trustee for the mortgagee. Often the deed also provides that the purchaser shall hold the grantor "harmless," i.e., indemnify him for any loss sustained; in this case, the mortgagor/grantor who pays the mortgage debt may sue the purchaser for indemnity. The mortgagor remains liable to the mortgagee on the mortgage debt even though the purchaser has agreed to assume it, and the mortgagor cannot compel the mortgagee to proceed against the purchaser or against the property.
>
> In addition, the mortgagee can proceed directly against the purchaser as a third party beneficiary of the assumption agreement.

Id. (footnotes omitted).

The law in Massachusetts regarding the termination of a debtor's right to the equity

of redemption is clear. "If a foreclosure sale is fairly conducted and there is no defect in the proceedings, the right of the intervener to redeem is gone when the contract of sale was made with the purchaser at auction." In re Crichlow, 322 B.R. at 235 (discussing, *inter alia*, Outpost Cafe, Inc. v. Fairhaven Savings Bank, 3 Mass. App. Ct. 1, 3, 322 N.E.2d 183, 184 (1975)(affirming a decree in favor of the defendant and purchaser at a foreclosure sale who contend that the premises were "sold" within the meaning of Mass. Gen. Laws. ch. 244, §§ 18, 21 and 22 at least as early as the time when they executed the memorandum of sale at the foreclosure sale, rejecting the position of the mortgagor who contended that the "sale" was not complete until the deed was delivered to the purchaser at the foreclosure sale, thereby permitting it to redeem the premises at any time prior to the delivery of the deed)). *See also* In re Grassie, 293 B.R. 829, 831 (Bankr. D. Mass. 2003); In re Dow, 250 B.R. 6, 8 (Bankr. D. Mass 2000); In re Theoclis, 213 B.R. 880, 882 (Bankr. D. Mass. 1997); Brown v. Fin. Enterprises Corp. (In re Hall), 188 B.R. 476, 482 (Bankr. D. Mass. 1995).

B. Analysis

Upon consideration of applicable law, the Court finds that the Debtor has failed to rebut 104 WSLT's position that he has no interest in the foreclosed Property. Although the Debtor intimated that the Memorandum of Sale was an executory contract which he could assume, he made no attempt to substantiate that argument either factually or legally. "An executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other."

13

In re Snowcrest Dev. Group, Inc., 200 B.R. 473, 477 (Bankr. D. Mass. 1996)(citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)). In this case, because the time within which Abouchleih, or the Debtor, could have performed under the Memorandum of Sale had expired before the Debtor filed his Chapter 13 case, there was nothing for the Debtor to assume. Thus, the Debtor's argument that the Memorandum of Sale is an executory contract is, at best, far fetched and, at worst, frivolous. Furthermore, even assuming the contract were executory, the Debtor has taken no steps to attempt to assume the contract either by motion or through his Chapter 13 Plan. Accordingly, the Court rejects the Debtor's "executory contract" argument as specious.

The Court also rejects the Debtor's argument that he retains a right of redemption vis à vis the first mortgagee. In the first place, the Debtor's reliance on Jennings v. Wyzanski, 188 Mass. 285, 74 N.E. 347 (1905), is misplaced. That case involved the pledge of four mortgages to secure a note unrelated to the indebtedness secured by the mortgages. Although the holder of the pledged mortgages foreclosed on one of them, the court found that the mortgagor's right to redeem his pledge had "never been take way from him or rendered unenforceable by any sale of the pledged property, under the statute or otherwise, for the purpose of devoting the proceeds of the pledged property [the four mortgages] to the payment of the debt for which it was pledged as collateral." Id. at 288. The court added: "[s]o far as the three mortgages which have precedence of that which has been foreclosed are concerned, the plaintiff's right to redeem them from his pledge . . is unaffected by the foreclosure of the fourth mortgage." Id. at 288-89. While at first blush

this language may seem to support the Debtor's position, essentially that there exist as many equities of redemption as there are mortgages on the Property, the Supreme Judicial Court later clarified as follows:

> When a mortgage of real estate pledged as collateral security for the payment of a note[,] other than the mortgage debt[,] is foreclosed[,] otherwise than by sale under a power, so that the pledgee thereby acquires title to the land absolute as against the mortgagor, still the pledgee holds the land as security merely for his debt against the pledgor, and the pledgee's interest in the land is liable to be defeated by the payment of the debt for which the mortgage was pledged.

Id. at 289 (citations omitted).

In addition to this Court's rejection of the Debtor's arguments, which warrant a finding that the provisions of the automatic stay do not apply to the Property, the Court is concerned about the deficiencies in the Debtor's Chapter 13 case, as well as the absence of a copy of the assignment of the Memorandum of Sale, which would have been unenforceable without a writing because of the Statute of Frauds. The Debtor's Schedules reflect the absence of disposable income, and his Plan is obliquely predicated upon the sale of the Property for which he no longer holds title. Under these circumstances, the Debtor's reorganization is not in prospect and the Court finds "cause" for relief from the automatic stay.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Stay Relief Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 9, 2005
cc: Herbert Weinberg, Esq., Jeffrey M. Frankel, Esq., Doreen B. Solomon, Esq.